UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| KEITH T. PARKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  1:24 CV 8 RWS |
| ) | |
| LELAND DUDEK, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

Keith Parker brings this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the Commissioner's decision denying his application for disability benefits under the Social Security Disability Insurance Program (SSDI), Title II of the Social Security Act, 42 U.S.C. §§ 401-434 and for benefits under the Supplemental Security Income Program (SSI), Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385.  For the reasons set forth below, I will affirm the decision of the Commissioner.

### **Procedural History**

Plaintiff Keith Parker was born on June 5, 1971.  (Tr. 196)  He is currently 53 years old.  Parker earned his GED in October 1989.  (Tr. 229)  In the past

several years before he applied for disability benefits Parker worked as a semi-truck driver and in a factory sawing and stacking lumber. (Tr. 245-248) Parker had employment earnings of $23,438.90 in 2020 and $10,294.39 in 2021. (Tr. 205) The last time he had gainful employment was on June 4, 2021. (Tr. 12.)

Parker protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on April 26, 2021. (Tr. 193-195) He initially alleged his disability began on April 10, 2021 (Tr. 193) but amended the date of disability to June 4, 2021. (Tr. 226) Parker's applications were initially denied on July 8, 2021. (Tr. 63-64) The applications were denied again upon reconsideration on October 14, 2021. (Tr. 77-78) On October 22, 2021, Parker filed a request for a hearing before an Administrative Law Judge (ALJ). (Tr. 119) The ALJ held an online video hearing on February 7, 2023. (Tr. 26-62) In his Disability Report, completed on May 3, 2021, Parker asserted that he was unable to work based on severe back pain with 2 herniated / compressed disks, hypertension, and diabetes. (Tr. 228) At the hearing before the ALJ Parker's counsel stated that Parker's impairments are primarily based on his spinal issues. (Tr. 35) Parker testified that his back issues keep him from working. He testified he did not have any feeling in his left leg or foot; he cannot sit or stand for very long; and he cannot walk very far without assistance. (Tr. 48) On February 17, 2023, the ALJ issued a decision finding that

2

Parker was not disabled. (Tr. 20) On May 23, 2023, the Appeals Council denied plaintiff's request for review. (Tr. 1) The ALJ's decision is now the final decision of the Commissioner. 42 U.S.C. §§ 405(g).

In this action for judicial review, Parker contends that the ALJ failed to develop the record fully and fairly and that the ALJ failed to properly evaluate the credibility of Parker's subjective complaints. (ECF # 17) Parker requests that I reverse the Commissioner's final decision and remand this matter for further evaluation. For the reasons that follow, I will deny Parker's request to remand this matter for further proceedings.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt Parker's statement of material facts (ECF # 18) and the Commissioner's additional material facts (ECF # 21). Additional facts will be discussed as needed to address the parties' arguments.

## Discussion

A.   Legal Standard

To be eligible for disability insurance benefits under the Social Security Act, a plaintiff must prove that he is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Secretary of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to

3

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity (SGA).[1] If not, the disability analysis proceeds to the second step. In this step the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then he is not disabled and the analysis

---

[1] "Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. 'Substantial work activity' is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). 'Gainful work activity' is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience." (Tr. 12.)

4

ends.  If the claimant has a severe impairment the Commissioner then proceeds to the third step and determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled.  If the impairment is not equivalent to a listed impairment, then the Commissioner proceeds to the fourth step to determine whether the claimant can perform his past relevant work.[2]  If so, the claimant is not disabled.  If not, at the last step the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.

 I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).  "[Substantial evidence] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (cleaned up).

---

[2] "The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965)." (Tr. 13.)

5

Determining whether there is substantial evidence requires scrutinizing analysis. Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. McNamara, 590 F.3d at 610.

When evaluating medical opinions and prior administrative medical findings, the ALJ will consider various factors, the "most important factors" being supportability and consistency. 20 CFR § 404.1520c(a). The ALJ must "articulate in his determination or decision how persuasive he find[s] all of the medical opinions and all of the prior administrative medical findings in your case record." Id. at § 404.1520c(b).

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's

6

subjective complaints when they are inconsistent with the record as a whole.  See e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> [The] claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

Id. at 1322.[3]  When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding.  Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding.  Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).

B.     ALJ's Decision

In his written decision, the ALJ found that Parker had not engaged in substantial gainful activity since June 4, 2021, the alleged onset of his disability.

---

[3] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character. However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." See SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); Lawrence v. Saul, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

7

(Tr. 12)  The ALJ found that Parker had the following severe impairments: degenerative changes of the lumbar spine.  The ALJ found the following non-severe impairments: hypertension, diabetes, and hyperlipidemia.  (Tr. 13)  The ALJ determined that Parker's impairments or combination of impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 14.)  The ALJ found Parker to have the residual functional capacity (RFC) to perform light work with the following limitations:

> [h]e can frequently climb ramps and stairs, and occasionally climb ladders, ropes and scaffolds.  The claimant can occasionally stoop and crawl.  He can frequently kneel and crouch.  He must avoid concentrated exposure to vibrations and hazards such as moving machinery and unprotected heights.

(Tr. 14)  The ALJ determined that Parker is unable perform any past relevant work.  (Tr. 19)  The ALJ consulted a vocational expert (VE) to assess whether jobs within Parker's RFC existed in significant numbers in the national economy.  (Tr. 19)  The VE identified the jobs of a retail clerk (4,000,000 positions); dining attendant (430,000 positions); and janitor (900,000 positions).  (Tr. 20)  The ALJ therefore determined that plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 20)

C.     Parker's Objections to the ALJ's Decision

Parker asserts that the ALJ failed to fully and fairly develop the record because he failed to obtain an MRI that was referenced in the record and failed to

8

properly evaluate Parker's credibility concerning his subjective complaints of pain and physical limitations.

### *The record was fully and fairly developed*

On May 2, 2021, Parker went to an emergency room reporting progressively worse lower back pain with periods of numbness in his left toes.  He had sharp pain across his lower back which radiated down his left leg.  (Tr. 365)  Upon examination the ER doctor found that Parker looked uncomfortable; had diffuse lower back tenderness to palpitation; the nerves and blood vessels in his feet were functioning properly ("neurovascularly intact distally") although a mildly decreased sensation to the left foot was noted; and he experienced pain in left leg when leg raised by the doctor ("positive straight leg test to the left").  (Tr. 367) He was not in acute distress. (Tr. 366)  A CT scan revealed Parker's vertebral body heights were well preserved; mild multilevel degenerative changes; and a "suspected disc bulge and left central extrusion at L4-5 causing up to moderate spinal canal stenosis and moderate left foraminal narrowing."

On May 7, 2021, Parker went to the Saint Francis Healthcare Systems Cape Spine & Neurosurgery unit.  Parker was seen by Rebecca Williamson, MSN, RN, FNP-C.  Parker noted that he had a past surgical history that included lumbar disc surgery and neck surgery. (Tr. 371)  Parker reported that his present pain began in October 2020 when he lifted "something" at work.  Parker was seen by a workers

9

compensation doctor who took x-rays and prescribed Tylenol and Ibuprofen. Parker returned to light duty work but reported that his pain grew progressively worse. He rated his pain is a 10/10 and constant and severe. Yet Williamson's report noted that he is not in acute distress. (Tr. 372) Parker reported that his pain was made worse by sitting, standing, pushing, pulling, twisting, and bending. His medications included gabapentin, Torodol, a corticosteroid, and Percocet. Williamson recommended Parker receive physical therapy and ordered a "selective nerve root block at left L4-5." She noted that Parker could wean off Percocet and take Ibuprofen as needed. She recommended that Parker return in two weeks after the injection to evaluate his progress. (Tr. 374)

On April 26, 2021, shortly before seeing Williamson at the Spine and Neurosurgery Unit, Parker filed for disability benefits. Parker's medical records were reviewed on July 8, 2021 by Susan Rosamond, MD, a medical consultant employed by the Commissioner and again on October 14, 2021, upon Parker's reconsideration request, by Chukwudi Nwodo, MD, another medical consultant employed by the Commissioner. (Tr. 63-67 and 77-86) Both doctors reviewed Parker's medical records, including the May 2, 2021 CT scan notes which recorded "suspected disc bulge and left central extrusion at L4-5 causing up to moderate spinal canal stenosis and moderate left foraminal narrowing." Based on this and

other information in the record, both doctors opined that Parker could perform light work.  (Tr. 70 and 86)

Parker asserts that the ALJ erred by not having a subsequent MRI result considered by the Commissioner's medical consultants.  That MRI of Parker's lumbar spine was performed on December 29, 2021.  On January 12, 2022, Parker was treated by Nurse Williamson who reviewed the MRI result which showed Parker "has developed myelopathic changes secondary to mod to severe left sided foraminal stenosis on the [left] at L4-5."  (Tr. 486)  Parker asserts that the ALJ's decision failed to mention Williamson's note of the increase in the severity of Parker's stenosis; from "moderate" in the May 2, 2021 CT scan to "moderate to severe" from the December 29, 2021 MRI.  However, Williamson's recommended course of treatment on January 12, 2022 remained conservative, selective nerve root block injections and physical therapy.  (Tr. 486)

Moreover, on May 18, 2022, Parker received follow-up care from Williamson.  She again noted the MRI results and concluded that Parker had only "moderate left-sided foraminal stenosis."  (Tr. 502)  Williamson had changed her January 12, 2022 diagnosis of "moderate to severe" stenosis back to "moderate" stenosis.  In the May 18 report Williamson notes that Parker never received physical therapy because he lacked medical insurance.  He also reported no relief from nerve block injections.  (Tr. 501)  Williamson recommended trying different

11

types of injections and 6 weeks of home physical exercises.  She also opined that Parker would likely require surgery to fuse the "L4-5 and could consider a microdiscectomy at L5-S1."  (Tr. 502)

Parker asserts that the ALJ's failure to specifically note Williamson's observation on January 12, 2022 that the MRI showed "moderate to severe" stenosis resulted in a record that was not fully and fairly developed.  "A plaintiff seeking to reverse an ALJ's decision due to the failure to adequately develop the record bears a heavy burden: a plaintiff must show both a failure to develop necessary evidence and unfairness or prejudice from that failure."  Hey v. Colvin, 136 F. Supp. 3d 1021, 1046 (D. Minn. 2015), citing Haley v. Massanari, 258 F.3d 742, 749–50 (8th Cir.2001).  It is undisputed that the ALJ's decision did consider the medical evidence from Parker's visit with Williamson on January 12, 2022.  The ALJ noted that an MRI was taken but did not specifically recount that Williamson found "moderate to severe" stenosis in the MRI.  The ALJ did consider Williamson's review of the MRI and did develop the record fully and fairly.  The fact that he did not explicitly cite a finding of moderate to severe stenosis by Williamson does not make his decision unsupported.  Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted. An

ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.") (internal citations omitted).

Moreover, Williamson modified her reading of the MRI when she found only "moderate left-sided foraminal stenosis" at Parker's May 18, 2022 follow-up visit.  In addition, the ALJ reviewed numerous medical examinations from January 2022 through September 2022 which indicated that Parker's condition was not getting worse, he was not in acute distress, he had tenderness to palpitations in his lower back, tenderness of the musculoskeletal system but had a normal range of motion, and his gait was antalgic[4] but there was no documentation of Parker using an assistive device to walk.  (Tr. 484, 501, and 556)  This medical evidence confirms that the ALJ's decision was supported by substantial evidence.  As a result, the ALJ did not fail to fully and fairly develop the record in this matter.

***The ALJ properly evaluated Parker's credibility concerning his subjective complaints of pain and physical limitations.***

Parker asserts that the ALJ's assessment of Parker's subjective complaints was not supported by substantial evidence.

On May 23, 2021, Parker completed a Functional Report in which he states that he cannot stand or sit for long periods of time, it hurts to bend over, it hurts to

---

[4] Marked by or being an unnatural position or movement assumed by someone to minimize or alleviate pain or discomfort (as in the leg or back).  https://www.merriam-webster.com/medical/antalgic

walk, he cannot carry "some heavier things," and his left leg and foot are numb and tingly. (Tr. 260) He also reported that he feeds his pet and takes them out "for potty," he can prepare meals, he can do light housework, he gets outside "quite a bit" and walks, drives and rides in a car, he can shop several times a week (short trips), and his hobbies are building and hunting ("as much as I can and for as long as I can.") (Tr. 261-264) At the hearing before the ALJ, Parker testified he drives 15 times or less a week (to doctor offices and to the store), he has no feeling in his left leg or foot, he cannot sit or stand very long and cannot walk far without assistance. (Tr. 37 and 48) Parker testified that his doctors have recommended a spinal fusion but he cannot get that surgery until his A1C levels go down (a complication of diabetes). (Tr. 49) Parker stated that he has pain in his lower back that radiates into his left buttocks and a little down his left leg. (Tr. 49) He can walk about 15 or 20 minutes before his pain becomes unbearable. He can sit for 5 or 10 minutes before he has to get up. (Tr. 50) He cuts his acre-and-a half yard with a riding lawn mower and trims his yard with a weed-eater and takes rest breaks during that activity. He testified his average day-to-day pain level is a 9 to a 10 even though he is taking pain medication. (Tr. 54)

 The ALJ found that Parker's:

> statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent with the objective evidence contained in the entire case record, the statements and other information

> provided by medical sources and others, as well as the measures taken to alleviate his symptoms, and the location, duration, frequency, and intensity of his symptoms (see 20 CFR 404.1529 and 416.929).

(Tr. 16)  Parker asserts that these findings are not consistent with Nurse Williamson's January 12, 2022 reading of the December 29, 2021 MRI which stated that Parker had "mod[erate] to severe left sided foraminal stenosis on the [left] at L4-5."  As previously addressed, Williamson amended that MRI reading on the May 18, 2022 when she noted that the MRI revealed only "moderate left-sided foraminal stenosis."   The ALJ's decision to not rely on Williamson's January 12, 2022 MRI reading is supported by substantial evidence in the record.

Parker also asserts that other medical evidence undermines the ALJ's decision.  Parker submits that his primary care provider, Nathan Sprengel, OD, has made physical exam notes that support Parker's claims of disability.  On January 17, 2023, Parker saw Sprengel to renew his pain medication.  Sprengel noted that Parker had limited range of motion and tenderness in the lumbosacral region, worse on the left side with radiation of pain down the left leg, and pain with palpation on the right scapular stabilizing muscles.  He also had numbness and tingling in the left leg down to his toes.  Parker reported a pain level of 8 out of 10. (Tr. 581)  Yet the Parker's level of distress was noted as "no apparent distress." The same exact same information was repeated in Sprengel's exam notes on

several previous visits with Parker to renew his pain medications.  (Tr. 602, 610, 617, 647, 660, and 675)  This information appears to be simply reproduced at each visit and does not appear be the result of an independent exam during each visit.

The ALJ noted that Parker's treatment for his back pain was conservative.  (Tr. 19)   The ALJ wrote that despite Parker's subjective assessment at his healthcare visits that his pain was a 9 out of 10 even with medication, the medical reports indicate that Parker was not in any acute distress at any visit.  (Tr. 17-18, citing Tr. 337, 405, 440, 448, 472, 484, 500, 516, 555, 581, 610, 617, 625, 647, 675, 703, 720, 735, 750, 765, and 779)

The ALJ also discussed how Parker's daily activities wer inconsistent with disabling pain.  (Tr. 15-16)  Parker represented that he gets outside "quite a bit" and walks, drives and rides in a car, he can shop several times a week (short trips), and his hobbies are building and hunting ("as much as I can and for as long as I can.")  He also testified that he drives 15 times or less a week.  He testified that mowed his acre-and-a-half lawn on a riding mower and used a weed-eater albeit taking breaks.  This information provides substantial evidence that Parker's subjective reports of his pain are inconsistent with his daily activities. See Wright v. Colvin, 789 F.3d 847, 854 (8th Cir. 2015) ("Wright himself admits to engaging in daily activities that this court has previously found inconsistent with disabling pain, such as driving, shopping, bathing, and cooking").

16

The ALJ did not disregard Parker's subjective complaints of pain and his limitations. The ALJ explained in his decision that he:

> accommodated the claimant's subjective complaints to the greatest extent possible consistent with the objective evidence of record. The claimant's degenerative disc disease results in limitations related to pain and stiffness and supports a finding that his exertional and environmental limitations are limited as set forth above. These limitations are sufficient to limit the risk of aggravation of the claimant's spinal impairment.

(Tr. 18) The ALJ concluded that Parker had a restrictive RFC with limitations for light work and postural and environmental limitations to accommodate Parker's spinal impairment. (Tr. 14, 18) The ALJ's determination is supported by substantial evidence in the record and will be affirmed.

## Conclusion

Based on the record as a whole in this case, I find that the ALJ's decision finding Parker is able to perform light work is supported by substantial evidence in the record.

Accordingly,

**IT IS HEREBY ORDERED that** the final decision of the Commissioner of Social Security is affirmed.

**IT IS FURTHER ORDERED that** The Clerk of Court shall substitute Leland Dudek, Acting Commissioner of Social Security, as the defendant in this matter.

A separate Judgment is entered herewith.

                                                                                 _____
                                                                                 RODNEY W. SIPPEL
                                                                                 UNITED STATES DISTRICT JUDGE

Dated this 4th day of March, 2025.